IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, et al., | )<br>)<br>) |
| Plaintiffs, | ) Case No. 10-CV-758<br>)<br>) Judge Nordberg |
| v. | )<br>) Magistrate Judge Nolan |
| MIRACLE EXPRESS, INC. | )<br>) |
| Defendant. | ) |

**AFFIDAVIT OF JUAN J. BEATON**

I, Juan J. Beaton, being duly sworn and on my oath, depose and state as follows:

1. I am an adult and am otherwise competent to give evidence. I have personal knowledge with respect to the facts set forth in this affidavit and would be competent to testify as to these facts if called as a witness in this matter.

2. I am employed by the Central States, Southeast and Southwest Areas Pension Fund and the Central States, Southeast and Southwest Areas Health and Welfare Fund[1] as the Division Manager of Collections. Pursuant to these duties, I have maintained a file related to the contributions owed by Miracle Express, Inc.[2] as well as my staff's conversations with Miracle Express concerning the outstanding contributions. This file is under my custody and control.

3. The Funds are multiemployer benefit plans and trusts administered by their Board of Trustees, who are collectively the Funds' plan sponsor. They are

---

[1] I shall refer to these two entities individually as "the Pension Fund" and "the Health and Welfare Fund," and collectively as "the Funds."
[2] I shall refer to the company simply as "Miracle Express."

-1-

primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters.

4.  The Funds' records show that Miracle Express is a Minnesota corporation with its principal place of business in the State of Minnesota. For purposes of collective bargaining, certain of Miracle Express' employees have been represented by Teamsters Local Union No. 120.[3]

5.  Miracle Express is bound by a collective bargaining agreement with Local 120, which agreement is known as the National Master Freight Agreement and Central States Area Local Cartage Supplemental Agreement, as well as an addendum to that agreement.[4] Pursuant to the CBA, Miracle Express agreed to pay contributions to the Funds on behalf of certain covered employees.

6.  In or about October, 2008 Miracle Express also entered into a Participation Agreement covering certain employees not represented by Local 120, and not in that bargaining unit. Pursuant to the Participation Agreement, Miracle Express agreed to pay contributions to the Health and Welfare Fund on behalf of those non-bargaining unit employees.

7.  Miracle Express also agreed in the Participation Agreement "to be bound by the terms of the Health and Welfare Fund trust agreement and all policies, rules and regulations that have been adopted or that are adopted in the future by the Trustees." The Health and Welfare Fund's Trust Agreement requires Miracle Express to "make

---

[3] I shall refer to Teamsters Local Union No. 120 simply as "Local 120."
[4] I shall collectively refer to these contracts as "the CBA."

F 324657 / 10110003

continuing and prompt payments to the [Funds] as required by the applicable collective bargaining agreement."

8. The Funds rely upon participating employers to self-report the work history of eligible employees in order to prepare a monthly bill and determine benefit eligibility. The self-reporting system requires participating employers like Miracle Express to identify those employees for whom contributions are owed and requires the employers to identify the weeks and/or days worked by the eligible employees.

9. I believe that Miracle Express has breached the provisions of the CBA, the Participation Agreement, and the Funds' Trust Agreements by failing to pay all of the contributions (and interest due thereon) that the employee work history it reported to the Funds revealed to be owed for the period of July, 2009 through December, 2009.

10. Despite demands that Miracle Express perform its statutory and contractual obligations with respect to making contributions to the Funds, the company has neglected and refused to pay the amounts that are due. The company has informed the Funds that it does not have the money or ability to pay its current obligations.

11. As of February 1, 2010, Miracle Express will owe the Pension Fund approximately $90,652.88 for unpaid contributions and interest. Miracle Express also owes the Health and Welfare Fund approximately $23,354.68 for unpaid contributions and interest through February 1, 2010.

12. Under the CBA, the Participation Agreement, and the Funds' Trust Agreements, Miracle Express is subject to an ongoing obligation to pay contributions to the Funds, but has consistently failed to do so since at least July, 2009.

13. Miracle Express' next monthly contribution (for January, 2010) is due on February 15, 2010. It is estimated by the Funds that the contributions due will be approximately $21,840.00 for the Pension Fund, and $28,750.00 for the Health and Welfare Fund.

14. The Funds have no adequate remedy at law to prevent Miracle Express' continued refusal to comply with the terms of the CBA, the Participation Agreement, and the Trust Agreements. Unless Miracle is enjoined from failing to comply with its obligation to submit required fringe benefit contributions, the Pension Fund will suffer irreparable harm.

15. The Pension Fund will suffer irreparable harm because it provides credit towards pension benefits to Miracle Express' employees – regardless of whether the contributions that are intended to pay for the pension credit are ever collected.

16. Further, employer delinquencies such as Miracle Express' adversely affect the Pension Fund's ability to meet funding standards, and negatively impact the Pension Fund's financial integrity.

17. In addition, Miracle Express' continued delinquency will cause the Pension Fund to lose the benefit of interest income that it would otherwise earn, and cause the Pension Fund to incur additional administrative expenses in connection with the detection and remedying of the delinquencies.

18. Unless Miracle Express is enjoined from failing to comply with its obligation to submit the required fringe benefit contributions, the Health and Welfare Fund will similarly suffer irreparable harm.

19. Until an employer is placed on suspension of benefits, the Health and Welfare Fund provides health and welfare coverage and benefits to the employer's employees – regardless of whether the contributions are ever collected. Once an employer is placed on suspension of benefits, the Health and Welfare Fund's participants and beneficiaries are irreparably harmed because their otherwise covered health claims are not paid by the Health and Welfare Fund until the corresponding contributions are paid.

20. Further, employer delinquencies such as those incurred by Miracle Express adversely affect the Health and Welfare Fund's ability to fund itself, and negatively impact the financial integrity of the Health and Welfare Fund.

21. In addition, Miracle Express' continued delinquency will cause the Health and Welfare Fund to lose the benefit of interest income that it would otherwise earn and cause the Health and Welfare Fund to incur additional administrative expenses in connection with the detection and remedying of the delinquencies.

**FURTHER, AFFIANT SAYETH NAUGHT.**

_Juan J. Beaton_

Subscribed and sworn to before me,
a Notary Public of the State of Illinois,
this 4th day of February, 2010.

Official Seal
Edward H Bogle
Notary Public State of Illinois
My Commission Expires 09/30/2012

_Edward H. Bogle_
Notary Public

-5-

F 324657 / 10110003